## JULIA A. SELLNER, EXECUTRIX OF ESTATE OF GEORGE F. SELLNER, AND ANOTHER v. CUNA MUTUAL INSURANCE SOCIETY AND ANOTHER.

181 N. W. (2d) 342.

November 13, 1970—No. 42159.

---

[1] See, Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354.

*Hauser & Hauser, Errol E. Hauser, Berens, Rodenberg & O'Connor,* and *R. T. Rodenberg,* for appellant.

*Gislason, Reim, Alsop & Dosland* and *C. Allen Dosland,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

Murphy, Justice.

Appeal from the district court judgment in an action by the executrix of the estate of George F. Sellner, decedent, against Cuna Mutual Insurance Society and St. Mary's Parish Credit Union of Sleepy Eye, Minnesota, denying recovery on a group insurance certificate issued to decedent member in connection with a loan made to him by defendant credit union. In its answer, defendant insurance company contended that decedent procured the policy by fraud and mutual mistake. Although the jury, by special verdict, found that the transaction between decedent and defendant credit union was a loan and, inferentially, that there was no fraud or mutual mistake in connection with the procurement of insurance, the trial court concluded that there could be no insurance because the prerequisites of a valid loan had not been met.

The situation out of which this dispute arises involves two contracts. The first is the loan of money from the credit union to the decedent member, represented by a $10,000 note. The second is an insurance agreement between defendant insurance company and defendant credit union, which was entered into for the protection of both the credit union and its member borrowers. The insuring agreement is the conventional type of single-premium

credit life insurance on the lives of debtors, with their creditors as beneficiaries, in amounts sufficient to discharge their indebtedness in case of death. Alinco Life Ins. Co. v. United States, 373 F. (2d) 336, 178 Ct. Cl. 813. Under the terms of the insuring agreement, the member borrower was eligible if he was under 70 years of age and able to perform the usual duties of his livelihood.

It appears that, on March 6, 1967, decedent applied for a $10,000 loan, which was approved. He executed a promissory note in that amount payable on January 8, 1969, with interest at 6½ percent per annum. The proceeds of the loan were deposited to decedent's account with the credit union, to which account he added an additional sum of $3,000. The credit union paid decedent interest at 4½ percent on this account. On May 26, 1967, decedent paid the sum of $157, representing interest on the loan to June 1, 1967. The savings account was held as collateral for the loan. To qualify for insurance on the loan, it was not necessary for decedent to submit an application or to take a physical examination. It was only necessary that he be able to perform the usual duties of his livelihood and that he meet the qualification as to age.

The jury found that decedent was able to perform the usual duties of his livelihood as an assessor and farm owner. The trial court was of the view that defendant insurance company was not required to pay the unpaid balance of the loan. The trial court arrived at this result by reasoning that there was no intent to enter into a valid loan agreement because the borrower would have been 70 years of age on the date the note was due and payable. This circumstance, together with the fact that the proceeds of the loan remained with the borrower as security, persuaded the trial court that the loan transaction was apparently nothing more than an invalid method of securing insurance protection.

We cannot agree with the trial court that the promissory note does not represent a valid loan transaction. Although the pro-

ceeds of the note were retained as security, the fact remains that decedent had available for his use the sum of $10,000 in cash. It was agreed that he could have substituted other collateral with the credit union had he wished to use it. Indeed, the record shows that decedent, prior to his death, was considering the purchase of 80 acres of land, which also might have been used as collateral for the loan had he wished to use the money to make that purchase. As in any other loan transaction, interest was paid on the note, and had decedent lived beyond the due date, there would be no question as to the validity of the transaction.

We accordingly conclude that the fact that the due date of the note and the 70th birthday of decedent are the same does not invalidate the loan transaction. Since decedent died before his 70th birthday, the insuring agreement was in full force and effect, and the estate of decedent is entitled to its benefits. It may well be, as the trial court suspected, that decedent used the mechanics of the loan transaction to procure additional insurance, but we do not think that this circumstance, if true, invalidated either contract. If the insurance company, by its arrangement with the credit union, chose to make this protection available to members without express qualifications other than those recited, we find no reason why decedent should not properly take advantage of it.

Reversed.